liPER CURIAM.
This action involves the involuntary termination of parental rights in connection with the determination of the availability of a child for adoption after the voluntary act of surrender by only one biological parent.
R.S., an unmarried twénty-fíve year old woman, domiciled 'in Indiana, gave birth to Q.P.E., in Baton Rouge, Louisiana, on June 11, 1994. On June 16, 1994, R.S. voluntarily executed an “Act of Surrender by an Unmarried Mother”. Also on June 16,1994, Q.P.E. was placed with Beacon House Adoption Services, Inc. (Beacon House). A “Notice of filing of Surrender” was filed on June 17, 1994. T.P.L., also a domiciliary of Indiana, and the biological father of Q.P.E., executed an authentic “Act of Acknowledgment” on July 5, 1994. On July 6, 1994, T.P.L. filed a “Petition in Opposition to Adoption” in the Eighteenth Judicial District Court.[1] T.P.L. also registered with the putative father registry for the State of Louisiana. After a hearing, the trial court signed a judgment on August 12, 1994, declaring that T.P.L. had forfeited his parental rights with regard to the minor child, Q.P.E. Accordingly, T.P.L.’s parental rights were terminated. Appellant has appealed that judgment.
Appellant contends on appeal the assumption of jurisdiction by Louisiana in this case was an unconstitutional denial of T.P.L.’s due process rights.
Act 513 of 1978 enacted R.S. 13:1700 to 13:1724. Pursuant to the authority of R.S. *891 24:253, these provisions have been designated as new Part III of Chapter 6 of Title 13 of the Louisiana Revised Statutes of 1950, “Uniform Child Custody Jurisdiction Law.” The general purposes of this law are: to avoid jurisdictional competition and conflict with courts of other states in matters of child custody, promote cooperation with the courts of other states, Rassure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and his family have the closest connection, discourage continuing controversies over child custody, deter abductions and other unilateral removal of children, avoid relit-igation of custody decisions of other states, facilitate the enforcement of custody decrees of other states, promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states.
La.R.S. 13:1702 provides:
A. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
(1) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child’s home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or
(2) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child’s present or future care, protection, training, and personal relationships; or
(3) The child is physically present in this state and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or
(4)(i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with Paragraphs (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.
Under paragraphs (1), (2) and (3) of the above quoted statute, no other state would have jurisdiction to make a child custody determination in this matter. Furthermore, it was, and is, in the best interest of the child that the juvenile court of West Baton Rouge Parish in the Eighteenth Judicial District assume jurisdiction over this matter. Additionally, the voluntary act of 13surrender by the mother was executed in Louisiana and Q.P.E. was born in Louisiana. Thus, pursuant to La.R.S. 13:1702(A)(4)(i), we find that the Eighteenth Judicial District Court had, and continues to have, jurisdiction in this matter.
Because we find that a Louisiana court had jurisdiction in this matter, a voluntary act of surrender was executed by Q.P.E.⅛ biological mother, and a notice of filing of surrender was filed, T.P.L. had to file certain documentation in order to preserve his parental rights, pursuant to La. Ch.C. art. 1137.
La.Ch.C. art. 1137 provides:
A. An alleged or adjudicated father or his representative, if applicable, may oppose the adoption of his child by filing a clear and written declaration of intention to oppose the adoption with the court indicated in the notice of filing of surrender within fifteen days[2] after the time he was served *892 with the notice of surrender, or from the time he was served with notice of the filing of an adoption petition in the event that no surrender was executed or filed.
B. In order to establish his parental rights at the hearing provided in Article 1138, the alleged or adjudicated father must demonstrate to the court his affirmative efforts to establish or maintain a parental relationship with the child. Relevant evidence includes but is not limited to proof of attempted legitimation of the child, formal acknowledgment of the child, declaration of paternity filed in the putative father registry after July 1, 1992, adjudication of paternity by a court, or provision of substantial parental care and support to the child.
On July 5, 1994, T.P.L. filed an authentic act of acknowledgment of Q.P.E., as well as registering with the putative father registry in Louisiana. On July 6, 1994, T.P.L. filed a “Petition in Opposition to Adoption.”
Therefore, we find, as did the trial court in its reasons for judgment, that T.P.L. preserved his right to be heard and met his burden of proving his affirmative efforts to establish a parental | relationship with Q.P.E., his new born child.
Appellant further contends the trial court erred in finding that La.Ch.C. articles 1137 and 1138 require the father of a newborn child to put on evidence of his fitness.
La.Ch.C. art. 1138 provides:
A. Within twenty days after receiving notice of opposition from an alleged or adjudicated father, the court shall hold a hearing to decide if he has established or forfeited his parental rights. The court shall consider his fitness and his commitment to parental responsibilities, including his attempts to establish or maintain a relationship with the child.
B. If the court finds that the alleged or adjudicated father has established his parental rights, the court shall declare that no adoption may be granted without his consent and shall order the child to be in his legal custody. If the court finds that the alleged or adjudicated father has forfeited his parental rights, the court shall decree that his rights are terminated.
C. If the alleged or adjudicated father establishes his parental rights and refuses to consent to the adoption, the court shall order him to reimburse the department, or the licensed private adoption agency, or other agency all medical expenses incurred for the mother and the child in connection with the birth of the child.
We pretermit an analysis of “fitness” in the interplay between La.Ch.C. arts. 1137 and 1138 for reasons hereinafter set forth.
Appellant further contends the trial court erred in finding the burden of proof was preponderance of the evidence in a case where termination of parental rights is at issue.
In considering T.P.L.’s fitness and his commitment to parental responsibilities, the trial court applied the preponderance of the evidence standard. The following discussion occurred between counsel for the adoptive parents and the trial judge:
MS. BAKER: And what is that burden?
THE COURT: To show that he’s unfit.
MS. BAKER: By clear and convincing, .beyond a reasonable doubt, a preponderance of the evidence?
THE COURT: Well, I assume it is as it is in any civil case since there is no exception in the statute.
La.Ch.C. art. 1035 provides in pertinent part:
[s ••• In all involuntary termination of parental rights proceedings the accused parent or parents shall be accorded due process of law.
The United States Supreme Court held in Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), that due process requires proof at least by the clear and convincing measure before the fundamental rights of parents can be extinguished.
Proof by a preponderance requires that the evidence, taken as a whole, shows that *893 the fact sought to be proved is more probable than not. Proof by clear and convincing evidence, demonstrates that the existence of a disputed fact is highly probable, that is, much more probable than its nonexistence. Hines v. Williams, 567 So.2d 1139 (La.App. 2nd Cir.), writ denied, 571 So.2d 653 (La.1990); State, In the Interest of J, K, & T, 582 So.2d 269 (La.App. 1st Cir.), writ denied, 583 So.2d 1145 (La.1991).
Thus, in light of La.Ch.C. art. 1035 and the holding in Santosky v. Kramer, we find the trial court erred in applying the preponderance of the evidence standard as opposed to the clear and convincing evidence standard required in order to extinguish fundamental rights, such as parental rights. Where legal error interdicts the trial court’s fact-finding process and the record is otherwise complete, the appellate court can make its own independent review of the record. However, we have problems with the trial court’s judgment indicating that it found T.P.L. unfit and based on that finding decreed that he had forfeited his parental rights. Those problems include: 1) the fact that T.P.L. has never even seen Q.P.E. let alone been able to establish and maintain a parental relationship with him; 2) whether the act of surrender complied with the statutory requirements of La.Ch.C. art. 1134, et seq.; 3) whether permitting a private adoption agency to place a child with an adoptive couple before the statutory delays have run, when it had knowledge that the father opposed the adoption, violated T.P.L.’s due process rights; 4) whether the adoptive parents had any standing to oppose T.P.L.’s opposition and if so, whether this violated T.P.L.’s constitutional rights; and 5) T.P.L.’s current status in the criminal justice system in 16lndiana. The record as presently constituted does not address any of these problems. We must remand so the trial court can hold another hearing.
In light of the foregoing, we need not address the additional arguments raised by appellant.
For the above reasons, we reverse the judgment of the trial court terminating the parental rights of T.P.L. and remand the matter to the Eighteenth Judicial District Court and order it to hold a new hearing, consistent with this opinion, within twenty days. It is also ordered that the Eighteenth Judicial District Court appoint a curator ad hoc for Q.P.E. and to order Q.P.E. to return to Louisiana and be placed temporarily with the Louisiana Department of Social Services, until a determination can be reached as to the parental rights of T.P.L. Appellees are cast for the costs of this appeal.
REVERSED AND REMANDED.
PARRO, J., concurs and assigns reasons.

. There is nothing in the record to indicate when or how the biological father was served with the notice of surrender.

. It is evident from the record that Beacon House, the adoption agency in this matter, placed Q.P.E. with adoptive parents prior to the running of the fifteen-day delay required under La.Ch.C. art. 1137. The agency placed the child with adoptive parents with the knowledge that the placement of Q.P.E. for adoption would be opposed by the alleged father.
To allow the adoptive parents, who are not the legal representatives of Q.P.E., to come in and *892 attack the natural father’s commitment to Q.P.E., his attempts to establish parental rights and his fitness as a parent may cause constitutional impairment of T.P.L.'s due process rights.